OLIVE A. DILLEBER, Appellant, *v.* HOME LIFE INSURANCE COMPANY, Respondent.

In an action upon a policy of insurance issued upon the life of a husband for the benefit of the wife, the declarations of the insured, made sometime prior to the application for the policy, are not competent to prove the existence of facts showing a breach of warranty, as that he had had a disease denied in the application. But where the facts are otherwise proved, and it is necessary to show that the insured had knowledge thereof, the declarations are competent for that purpose.

Information as to the condition of the insured acquired by a physician while attending upon him, which was necessary to enable the physician to prescribe, he is prohibited from disclosing (2 R. S., 406, § 73), and he is incompetent as a witness to testify thereto.

Where, upon a trial, an objection has once been distinctly raised and over-ruled, it need not be repeated to the same class of evidence; and an omission to repeat it is not a waiver.

Where, by a policy of life insurance, the answers of the insured are made warranties, if a question is not answered there is no warranty that there was nothing to answer; and·in the case of a partial answer the warranty cannot be extended beyond the answer.

Warranties in policies of insurance are strictly construed; they will not be extended to include anything not necessarily implied in their terms. Fraud may be predicated upon a suppression of truth, but warranty must be based upon the affirmation of something not true.

Accordingly, *held,* where the answers contained in the application "were warranted to be full, correct and true," and where, in answer to questions as to whether the insured had had any sickness or disease within ten years, and if so to give name of physician, he answered that he had an attack of typhoid fever nine years ago, and gave the name of the attending physician, that the fact that he had had other sicknesses, and had been attended by other physicians, did not establish a breach of warranty.

(Argued March 28, 1877; decided April 10, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, in favor of defendant, entered upon an order denying a motion for a new trial and directing judgment on a verdict.

This action was upon a policy of life insurance issued by defendant upon the life of Thomas H. Dilleber, husband of plaintiff.

The facts are sufficiently stated in the opinion.

The court on trial directed a verdict for defendant, to which plaintiff's counsel duly excepted. Exceptions ·were ordered to be heard at first instance at General Term.

*John E. Develin,* for the appellant. The court erred in admitting the testimony of the physicians of the insured. (*Edington* v. *Mut. L. Ins. Co.,* 67 N. Y., 185; 1 Greenl. on Ev., §§ 113, 108–110; Story on Agency, §§ 134–137.) The statements in the letters of the insured were not conclusive upon the plaintiff. (*Cushman* v. *U. S. L. Ins. Co.,* 63 N. Y., 409.) It is not competent for a life insurance company incorporated by the laws of this State to insert in a policy

issued to a married woman upon the life of her husband, clauses or stipulations changing the nature and legal effect of representations and converting them into warranties. (Laws of 1858, chap. 187, § 1; *Eadie* v. *Slimmon*, 26 N. Y., 15, 17, 18; Potter's Dwarris on Stat., 73, 231; 2 Kent's Com. [12th ed.], 487, note.)

*A. B. Capwell*, for the respondent. The answers and statements in the application are warranties. (*Higbie* v. *Guard. Mut. L. Ins. Co.*, 53 N. Y., 683; 2 Ins. L. J., 761; *First Nat. Bank* v. *Ins. Co. of N. Am.*, 50 N. Y., 45; *Le Roy* v. *Market Ins. Co.*, 39 id., 91; 45 id., 80; *Ripley* v. *Ætna Ins. Co.*, 30 id., 136; *Smith* v. *Ætna Ins. Co.*, 49 id., 211; *Vose* v. *Eagle L. Ins. Co.*, 6 Cush., 42; *Anderson* v. *Fitzgerald*, 4 H. of L. Cas., 48; *Britton* v. *Mut. Ben. L. Ins. Co.*, 3 N. Y. [Sup. C.], 220, 242; *Brennan* v. *Secur. L. Ins. Co.*, 4 Daly, 296; *Baker* v. *Home L. Ins. Co.*, 4 N. Y. [Sup. Ct.], 582.) The letters of the insured were inadmissible as statements concerning his own health. (*Swift* v. *Mass. Mut. L. Ins. Co.*, 63 N. Y., 186.) The false answers to the questions in the application avoided the policy. (*Everett* v. *Desborough*, 5 Bing., 503; 4 id., 60; Bliss on Ins. [2d ed.], 183, 185; *Palmer* v. *Irving*, Taylor's Med. Jur., 760; *Horn* v. *Am. Mut. L. Ins. Co.*, 64 Barb., 82; *Smith* v. *Ætna L. Ins. Co.*, 49 N. Y., 211; *Monk* v. *Un. Mut. L. Ins. Co.*, 6 Robt., 455.)

EARL, J. On the 17th day of August, 1867, the plaintiff took out a policy in the defendant upon the life of her husband, payable to him on the 14th day of August, 1902, if he should then be living, but in case of his death before that time, payable then to her. He died September 5, 1871, and this action is brought to recover the amount insured. The action is defended upon the grounds of breach of warranty; and fraud in the representations contained in the application upon which the policy was issued. At the close of the evidence, upon motion of defendant's counsel, the

court held that the uncontradicted evidence showed breach of warranty in the answers to certain questions contained in the application, and upon that ground directed a verdict for the defendant. Plaintiff's counsel excepted to the direction, and asked to have all the questions of fact submitted to the jury, and excepted to the refusal of the judge to comply with the request.

The plaintiff and her husband answered " no " to questions in the application whether he had ever had the diseases of bronchitis, consumption, or spitting of blood, or so far as he knew, any symptoms of such diseases; whether he had ever had disease of any vital organ; and whether he had ever had any habitual cough.

Upon the trial, after defendant had given evidence by physicians and other witnesses, that prior to the date of the policy the assured had spit blood and had a cough, and had symptoms of consumption, its counsel offered in evidence certain letters written by the assured to his brother: One written August 20, 1866, in which he stated, " at Binghamton I was taken with hemorrhage of the lungs, which made me look ghastly for a few days; am taking cod liver oil, and drinking tar water; do not cough much now;" and another written June 21, 1867, in which he stated, " my health is very poor; my cough hangs on to me; yesterday I was examined, and I find my right lung is affected; my physician recommends a trip to the salt water, and perhaps I may go in the course of a few days."

Plaintiff's counsel objected to these letters, on the ground that the statements were those of a person having no interest in the policy, mere hearsay, and not admissible. The court overruled the objections and received the evidence, and plaintiff's counsel excepted. It was not specified for what purpose these letters were offered or received, and the objection was general calling for their total exclusion. Hence, if they were competent for any purpose there was no error in receiving them. It is now well settled that they were not competent to prove the facts stated in them. (*Swift* v.

*The Mass. Mut. Life Ins. Co.*, 63 N. Y., 186 ; *Eddington* v.
*The Mut. L. Ins. Co.*,* recently decided in this court but not
reported.)    But it was important for the defendant to show
that the assured had knowledge that he had had symptoms
of consumption, and for the purpose of showing such knowl-
edge, the facts being otherwise proved, within the cases
above cited the letters were competent.    Hence there was
no error committed in receiving these letters, but they must
be treated as received for the sole purpose for which they
were admissible.    The defendant called several physicians,
and asked them to disclose information which they had
acquired as to the condition of the assured while attending
him professionally, and which information was necessary to
enable them to prescribe for him as physicians.    The evi-
dence was objected to by plaintiff's counsel, on the ground
that the statute prohibited such disclosures.    The objection
was overruled, and the evidence was received.    It is not now
disputed that the court erred in receiving this evidence.
(2 R. S., 406, § 73;  *Edington* v. *Mut. Life Ins. Co., supra.*)
But the claim is that this evidence did not harm the plain-
tiff, as the other evidence was overwhelming and undisputed
that there was a breach of warranty.    With this view all the
evidence of the physicians called by the defendant as to the
diseases of the assured must be stricken out.    It is true that
the plaintiff did not object to the evidence of Dr. Clark, who
attended the assured at Niagara Falls in 1867, prior to the
date of the policy.    But having already made her objections
three times to the same class of evidence, it was not neces-
sary that the objection should be repeated.    The reception
of this evidence was the consequence of the erroneous rule of
law laid down in the disposition of the prior objections, and it
must be treated as having been received under the ruling.
When upon a trial an objection has once been distinctly made
and overruled, it need not be repeated to the same class of
evidence.    The rule in such cases has been laid down and
should be observed in the further progress of the trial, with-

* 67 N. Y., 185.

out further vexing the court with useless objections and exceptions. Nothing is waived by conforming to the rule laid down. Hence, Dr. Clark's evidence, like that of the other physicians, must be treated as out of the case.

The letters, as above said, cannot be used to prove the facts stated in them. After all this evidence is stricken out, the defendant has lost the main features of its defence. It has left the evidence of several lay witnesses as to the spitting of blood by the assured to some extent, and as to his coughing and his appearance on several occasions. But on the other hand, the plaintiff has the certificate of defendant's examining physician, made at the time of the application, showing a perfect state of health, and the evidence of two physicians and other witnesses tending to show freedom from disease, a good state of health prior to the date of the policy, and that the spitting of blood may have been casual, and not the result of any disease. Without the improper evidence, there would have been such a conflict in the evidence as to his diseases and the state of his health before the date of the policy as to have required, as demanded by the plaintiff, a submission of the questions to the jury. For the error thus alluded to, then, the judgment must be reversed, unless for considerations now to be noticed an affirmance may still be had.

In the application were the following questions and answers: "Has the party had, during the last ten years, any sickness or disease ? if so, state particulars, and the name of the physician or physicians who prescribed, or who were consulted." A. "Nine years ago had an attack of typhoid fever." Q. "Have you employed or consulted any physicians for yourself or your family ? if so, give name or names and residence." A. "Dr. Paine, Putnam, Conn., nine years ago; he is now dead."

Annexed to the application was an agreement, signed by the plaintiff and her husband, in which it was declared that the answers contained in the application "are warranted to be full, correct, and true, and that no circumstance is con-

cealed or withheld in relation to the past or present state of his health, etc., which may render an insurance on his life more than usually hazardous, or which may affect unfavorably his prospects of life, and with which the directors of said company ought to be made acquainted," and in which it was agreed that if the answers were not in all respects full, true and correct, the policy should be void.

It was proved beyond question that in August, 1866, at Binghamton, the assured had an attack of spitting blood, and that a doctor was called, and visited and prescribed for him twice. Dr. Clark, of Niagara Falls, was called as a witness by defendant, and testified that he knew the assured at that place in June and July, 1867, that he was attending plaintiff who was sick, and that from June 16th to July 3d he also attended the assured daily, and prescribed for him. But the plaintiff testified that she was there, that she was sick, and that Dr. Clark attended her; that the assured was not sick, and that she never heard that Dr. Clark examined him. There were two other physicians called by the defendant who had attended the assured, but their attendance was after the date of the policy. Upon this evidence can it be held as matter of law that there was a breach of warranty in the answers in reference to the physicians? The answers were literally true. Dr. Paine had been his physician about the time mentioned, in a serious and protracted illness, and he was dead. It was not said that he had had no other physician, and if a fuller and more precise answer was desired, the defendant should have exacted it. It was full and complete so far as it went. (*Fitch* v. *Am. Pop. Life. Ins. Co.*, 59 N. Y., 557, 573; *Edington* v. *Mut. Life Ins. Co.*, *supra*.) If a question is not answered there is no warranty that there is nothing to answer. (*Liberty Hall* v. *Ins. Co.*, 7 Gray, 261.) And so in the case of a partial answer, the warranty cannot be extended beyond the answer. Fraud may be predicated upon the suppression of truth, but breach of warranty must be based upon the affirmation of something not true. Here there was no warranty that the answer stated

the names of all the physicians whom he had employed or consulted at any time. It is true that in the agreement annexed to the application it is said that the answers are warranted "to be full." But what was intended by these words, and what had the assured a right to suppose was intended by them? Was it intended that the assured should lose the benefit of his policy, after parting with his money, if he omitted, innocently or inadvertently, to give the name of every physician who at any time had been employed for himself or for his family in any illness, however temporary or trifling? The circumstances under which the words were used forbid such a construction. The assured had answered many questions calling for minute information upon many subjects, and for the substantial truth of his answers he was responsible. The other thing to be provided against was the suppression of the truth, and hence in the agreement there is a warranty that the answers are full, and that no material circumstance has been "concealed or withheld." Taking all the language used, the meaning was that the answers were true, and that they were full, in the sense that the assured had not intentionally concealed or withheld any material fact or circumstance. The assured could not have understood from all the language used that if he answered honestly all the questions put to him, he was to lose the benefit of his policy in case he omitted some fact requisite to make any one of the numerous answers full, because his attention was not particularly called to it, or because it had escaped his attention or memory, or because he did not deem it material to a full answer. Warranties in policies of insurance are strictly construed. They will not be extended to include anything not necessarily implied in their terms. (*Loud* v. *Ins. Co.*, 2 Gray, 221; *Campbell* v. *Ins. Co.*, 98 Mass., 381; *Hide* v. *Bruce*, 3 Douglas, 213.)

When the language used in a policy may be understood in more senses than one, it is to be understood in the sense in which the insurer had reason to suppose it was understood by the assured. (*Hoffman* v. *Ætna F. Ins. Co.*, 32 N. Y.,

405.) Conditions and provisos must be strictly construed against the insurers, because they have for their object to limit the scope and defeat the purpose of the principal contract; and as the insurer prepares the contract and furnishes the language used, any ambiguity in the contract must be taken most strongly against him. (*Fowkes* v. *M. & L. Life Ass. Assn.*, 3 Best & Smith [Q. B.], 917.)

We are therefore of opinion that it was a question of fact to be submitted to a jury whether the answer of the assured as to the physicians employed or consulted, was honestly and fairly made, or whether a portion of the truth was fraudulently and intentionally suppressed or withheld.

The judgment must therefore be reversed and a new trial granted, costs to abide event.

All concur, RAPALLO, J., absent.

Judgment reversed.